

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Jston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

June 21, 1984

Honorable Froy Salinas
Chairman
State, Federal and International
  Relations Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-177

Re: Scope of "conditions of work" with regard to public employees' presentation of grievances

Dear Representative Salinas:

You have asked whether

> a state agency [may] restrict, limit, narrow or exclude certain areas of wages, hours, or conditions of work from the definition of a grievance.

Your question refers to a statute which directs that

> [t]he provisions of this Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or <u>conditions of work</u> individually or through a representative that does not claim the right to strike. (Emphasis added).

V.T.C.S. art. 5154c, §6. You advise that some agencies do not recognize an employee's right to file grievances individually or through a representative concerning such matters as assignment and reassignment of employees, salary schedules, contents of personnel evaluations, terminations, and other such job-related matters.

We conclude that the key statutory language, "conditions of work," may not be construed to "restrict, limit, narrow or exclude" any aspect of the employment relationship from the grievance process.

The Supreme Court of Texas has given a very broad construction to the term "conditions of work" in article 5154c, section 6. In the leading case of <u>Corpus Christi American Federation Teachers v. Corpus Christi Independent School District,</u> 572 S.W.2d 663 (Tex. 1978) (per curiam), [hereinafter <u>Corpus Christi AFT</u>] the court concluded that the membership and agenda of a faculty advisory committee involved a "condition of work" within the meaning of the statute, despite the

fact that discussion by the committee was limited to educational policy and that consideration of topics such as salaries and fringe benefits was excluded. The court based its opinion on the grounds that the committee served "to provide a direct line of communication to the [school] management," and that, even with the exclusion of some work-related topics, discussion of many other topics related to "conditions of work" could possibly have arisen and, indeed, could not have been precluded in view of the committee's function of communicating with management. 572 S.W.2d at 664. Though the court found it unnecessary to define "conditions of work" precisely, it is plain that its meaning was intended to be very broad.

Thus in Corpus Christi AFT the court reasoned that the simple possibility that some unspecified work-related matters might arise in labor-management discussion necessarily involved "conditions of work." You, in contrast, present the case of definite and undisputed conditions of work which have actually arisen in such discussion or which are normally considered subjects for labor-management communication. Thus it is unnecessary to go to the full limits of the supreme court's broad but indefinite construction of that term to declare that the matters presented in your letter are indisputably "conditions of work" for which a grievant may invoke article 5154c, section 6.

This broad construction of the term "conditions of work" is complemented and supported, moreover, by accepted usage in the field of labor law, and is thus further consistent with the court approved maxim that terms of art should be construed in their technical sense in the absence of contrary legislative intent. See, e.g., Lloyd A. Fry Roofing Company v. State, 541 S.W.2d 639, 642 (Tex. Civ. App. - Dallas 1976, writ ref'd n.r.e.) (construing "uncombined water"). In construing article 5154c, the basic statute governing labor-management relations in state employment, Texas courts have in fact turned to the usage of analogous federal labor laws to construe terms in the state statute. See, e.g., Lunsford v. City of Bryan, 297 S.W.2d 115, 117 (Tex. 1957) (using federal labor law to construe "membership" in art. 5154c, §4); Dallas Independent School District v. American Federation of State, County and Municipal Employees, Local Union No. 1442, 330 S.W.2d 702, 707 (Tex. Civ. App. - Dallas 1959, writ ref'd n.r.e.) (using federal labor law to construe "representative" in art. 5154c, §6). In Lunsford the court implicitly found that this constructional technique was consistent with the intent of the legislature in enacting article 5154c. Lunsford, supra, at 117.

Section 8(d) of the National Labor Relations Act [hereinafter NLRA], 29 U.S.C. §158(d), requires unions and management to meet and confer with respect to "terms and conditions of employment." Section 8(d) is analogous to article 5154c, section 6, because both address the subject matter of mandatory employer-employee discussion, whether in collective bargaining or grievance procedures, respectively. Both the federal courts and the National Labor Relations Board [hereinafter NLRB] have interpreted this provision in the NLRA to include virtually

any subject which "is an aspect of the relations between [an employer] and its own employees," Ford Motor Company v. NLRB, 441 U.S. 488, 501 (1979); see also Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburg Plate Glass Company Chemical Division, 404 U.S. 157, 178-79 (1971), or which involves "a departure from previously established operating practices, or . . . a significant impairment of job tenure, employment security, or reasonably anticipated work opportunities . . . ." Westinghouse Electric Corporation, 150 N.L.R.B. 1574, 1576 (1965). Nor is it relevant that the employer considers the issue "too trivial" so long as the employees consider the matter substantial. Ford Motor Company, supra, at 501. It is therefore plain that the expression "terms and conditions of employment" found in section 8(d) of the NLRA includes the public employees' activities as set forth in your letter, and when section 8(d) is used as an aid in construction of the state statute, this approach also confirms that these activities are "conditions of work" within the meaning of article 5154c, section 6.

## S U M M A R Y

Under both state decisional law and accepted usage in the field of labor law, a state agency may not unduly and unjustly restrict the scope of matters included in "conditions of work" as a means to limit the protections of article 5154c, section 6, V.T.C.S., offered to state employees presenting grievances. Instead, the term "conditions of work" should be construed broadly to include any area of wages, hours or conditions of employment, and any other matter which is appropriate for communications from employees to employer concerning an aspect of their relationship.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Colin Carl
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Nancy Sutton